John W. Harris (SBN 66130)
Herbert Hayden (SBN 248282)
**HARRIS & ASSOCIATES**
865 South Figueroa Street, Suite 2750
Los Angeles, CA 90017
Tel: (213) 489-9833
Fax: (213) 489-3761
E-mail: john@jwharrislaw.com

Attorneys for Plaintiff
SYBIL DAVIS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYBIL DAVIS, an individual and as a Successor in Interest to ANTHONIE D. SMITH<br><br>Plaintiff<br><br>v.<br><br>THE COUNTY OF RIVERSIDE; THE CITY OF MORENO VALLEY; and DOES 1 through 50, inclusive,<br><br>Defendants | Case No. 5:16-CV-00227-JGB(KKx) Consolidated with Case No. 5:16-CV-01323-JGB(KKx) [*The Hon. District Judge, Jesus G. Bernal, Magistrate, Kenly Kiya Kato*]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, ALTERNATIVELY MOTION FOR NEW TRIAL; DECLARATION OF HERBERT HAYDEN**<br><br>**DATE: April 8, 2019**<br>**TIME: 9:00 A.M.** |

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff hereby submits her Opposition to Defendant Sgt. Sheree Anthony's Renewed Motion for Judgment as a Matter of Law ("JMOL") and in the alternative Motion for New Trial.

# Table of Contents

**I.    INTRODUCTION** ................................................................................. …..2, 3

**II.    MATERIAL FACTS ELICITED AT TRIAL**……….......................3-5

**III. STANDARD OF REVIEW** .................................................................. 5

    a. Standard of Review for a Motion for JMOL  ............................ 5,6

    b. Standard of Review for a Motion for New Trial .................... 6,7

**IV.  ARGUMENT**.......................................................................................... 7

   1. Substantial direct and circumstantial evidence was presented
      for  the jury to conclude that Sgt. Anthony's last shot caused
      decedent's death ............................................................... 7–9

   2. Plaintiff Submitted Substantial Evidence of Pre-Death Pain
      and Suffering although Such Evidence is Not Required
      under *Chaudhry* and its Progeny of Section 1983 Cases ...................... 9–11

   3. Plaintiff Submitted Substantial Evidence that The Totality
      of The Circumstances Warranted a Finding of Excessive
      Force, Liability for the Other Force-Related State Claims, and
      that Defendant's Testimony was Not Credible or Trustworthy ........... 11-14

   4. Sgt. Anthony Is Not Entitled to Qualified Immunity ............................ 14,15

      a.    Decedent Did Not Pose An Immediate Threat To The
        Safety Of The Officers Or Others Immediately Before
        Sgt. Anthony Fired the Last Gunshot............................................. 16,17

      b.    Sgt. Anthony Could Have Used Non-Lethal Force By
        Waiting and Exercising Patience Because Decedent Did
        Not Pose An Immediate Threat Immediately Before Sgt.
        Anthony Fired the Last Gunshot ...................................................... 17,18

      c.    Defendant's Argument that There is No Precedent that
        Would Have Put Her On Notice Flies in the Face of
        Tennessee v. Garner ...................................................................... 18,19

5.  The Jury's Verdict on Plaintiff's 14th Amendment Substantive Due Process Claim Should Remain Undisturbed,......................................... 20

6.  The Court Must Deny Defendant's Motion for New for the Very Reasons her Motion for JMOL Fails ................................................. 21

    a.  Qualified Immunity and Sufficiency of the Evidence of Excessive Force ................................................................................  21

    b.  The Jury's Award Was Not Grossly Excessive or Monstrous........ 21-23

V.  **CONCLUSION**............................................................................................ 23

# Table of Authorities

*Cases*                                                                                          *Pgs.*

*Abraham v. Raso*
183 F.3d 279 (3rd Cir. 1999) ........................................................ 19

*Anderson v. Creighton*
483 U.S. 635, 640 (1987) ........................................................ 14

*Avina v. United States*
681 F.3d 1127 (9th Cir. 2012) ........................................................ 14

*Banks v. Emeryville*
109 F.R.D. 535 (N.D.Cal.1985) ........................................................ 13

*Brockington v. Boykins*
637 F.3d 503 (4th Cir. 2011) ........................................................ 19

*Bryan v. MacPherson*
630 F.3d 805 (9th Cir. 2010) ........................................................ 16

*Carey v. Piphus*
435 U.S. 247 (1978) ........................................................ 10

*Chaudhry vs. City of L.A.*
751 F.3d 1096 (9th Cir. 2014) ........................................................ 8, 10, 22

*City of Canton v. Harris*
489 U.S. 378 (1989) ........................................................ 8

*Cruz v. City of Anaheim*
765 F.3d 1076 (9th Cir. 2014) ........................................................ 12

*Curnow v. Ridgecrest Police*
952 F.2d 321 (9th Cir. 1991) ........................................................ 17

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*
95 F.3d 1422 (9th Cir. 1996) ........................................................ 22

*Deorle v. Rutherford*
272 F.3d 1272 (9th Cir. 2001) ........................................................ 15,18

*E.E.O.C. v. Go Daddy Software, Inc.*
581 F.3d 951 (9th Cir. 2009) ................................................. 5

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*
762 F.3d 829, 842 (9th Cir. 2014) .......................................... 6

*Ford v. City of Yakima*
706 F.3d 1188 (9th Cir. 2013) ............................................. 14

*Franklin v. Foxworth*
31 F.3d 873 (9th Cir. 1994) ............................................... 16

*Friedman v. Live Nation Merchandise, Inc.,*
833 F.3d 1180 (9th Cir. 2016) .............................................. 2

*George v. Morris*
736 F.3d 829 (9th Cir. 2013) ......................................... 12, 13

*Glenn v. Washington County*
673 F.3d 864 (9th Cir. 2011) ...................................... 7, 15, 17

*Go Daddy Software, Inc.,*
581 F.3d 966 ............................................................. 21

*Gonzalez v. City of Anaheim*
747 F.3d 789 (9th Cir. 2014) ............................................. 13

*Graham v. Conner*
490 U.S. 386 ........................................................ 11,15, 16

*Graham v. Conner*
109 S. Ct. 1865 (1989) ............................................... 15, 16

*Gravelet-Blondin v. Shelton*
728 F.3d 1086 (9th Cir. 2013) ............................................ 16

*Hall v. City of Fairfield*
2:10–cv–00508–GEB–DAD, 2012
U.S. Dist. LEXIS 40256, at *11, 2012
WL 996572 (E.D.Cal. Mar. 23, 2012) ...................................... 13

*Harper v. City of Los Angeles*
533 F.3d 1010, 1026 (9th Cir. 2008) ........................................................ 8

*Harris v. Roderick*
126 F.3d 1189 (9th Cir. 1997) ................................................................. 17

*Henderson v. Turner,*
Civil. Action No. 11–39 Section C(4), 2012
U.S. Dist. LEXIS 106630, at *5, 2012
WL 3109482 (M.D.La. July 31, 2012) ...................................................... 13

*Hope v. Pelzer*
536 U.S. 730 ......................................................................................... 19

*Hopkins v. Andaya*
958 F.3d 881 (9th Cir. 1992) .................................................................. 19

*Johnson v. Hale*
13 F.3d 1351, 1353 (9th Cir. 1994)…. ...................................................... 8

*Josephs v. Pacific Bell*
443 F.3d 1050, 1062 (9th Cir. 2006) ......................................................... 8

*Kopfinger v. Grand Central Pub. Market*
60 Cal.2d 852 (1964) .............................................................................. 8

*Landes Const. Co., Inc. v. Royal Bank of Canada*
833 F.2d 1365 (9th Cir. 1987) ............................................................. 6, 7

*Lopez v. Gelhaus*
871 F.3d 1021 ....................................................................................... 15

*Margeson v. White Cty., Tenn.*
579 F. App'x 466 (6th Cir. 2014) ............................................................ 19

*Maynard v. City of San Jose*
37 F.3d 1396 (9th Cir. 1994) .............................................................. *5, 12*

*Memphis Cmty. Sch. Dist. v. Stachur*
477 U.S. 299 (1986) ............................................................................... 10

/ / /
/ / /

*Ortega v. Kmart Corp.*
 26 Cal.4th 1200 (2001) ................................................................ 8

*Ostad v. Or. Health Scis. Univ.*
327 F.3d 876 (9th Cir. 2003) ...................................................... 5

*Oviatt v. Pearce*
954 F.2d 1470 (9th Cir. 1992) .................................................... 8

*Patterson v. Randazzo*
160 F. Supp. 3d 849 (M.D.N.C. 2016) ....................................... 19

*Pearson v. Callahan*
555 U.S. 223 (2009) .................................................................. 14

*Quezada v. County of Bernalillo*
944 F.2d 710 (10th Cir.1991) .................................................... 13

*Reeves v. Sanderson Plumbing Products, Inc.*
530 U.S. 133 (2000) .................................................................... 6

*Saucier v. Katz*
533 U.S. 194 (2001) .................................................................. 14

*Silver Sage Partners, Ltd. v. City of Desert Hot Springs*
251 F.3d 814 (9th Cir. 2001) ................................................. 7, 21

*Skydive Ariz., Inc. v. Quattrocchi*
673 F.3d 1105 (9th Cir. 2012) ................................................... 21

*Smith v. City of Hemet*
394 F.3d 689 (9th Cir. 2005) .................................................... 11

*Smith v. City of Oakland*
538 F.Supp.2d 1217 (N.D. Cal. 2008) ....................................... 22

*Smith v. Wade*
461 U.S. 30, 52 (1983) ......................................................... 10, 11

*Tennessee v. Garner*
471 U.S. 1, 11 (1985) ...................................................... 12, 15, 19

*Torres v. City of Madera*
648 F.3d 1119 (9th Cir. 2011) ........................................................ 15, 19

*Tortu v. Las Vegas Metro. Police Dep't*
556 F.3d 1075 (9th Cir. 2009) ........................................................ 22

*Tubar v. Clift*
453 F.Supp.2d 1252 (W.D.Wash.2006) ........................................ 19

*United States v. Ramirez-Rodriquez*
*552 F.2d 883 (9th Cir. 1977)* ........................................................ 2

*Varas v. Barco Mfg. Co.*
205 Cal.App.2d 246 (1962) ........................................................... 8

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*
No. 07CV280-IEGRBB, 2008 WL 5147201
at *4 (S.D. Cal. Dec. 8, 2008) ...................................................... 8

Viner v. Sweet
30 Cal. 4th 1232 (2003) ............................................................... 8

*Wallace v. City of San Diego*
479 F.3d 616 (9th Cir. 2007) ......................................................... 5

*Warren v. Marcus*
78 F. Supp. 3d 1228 (N.D. Cal. 2015) .......................................... 15

*Waterman v. Batton*
393 F.3d 471, (4th Cir. 2005) ....................................................... 19

*White v. Rope*
901 F.2d 1501 (9th Cir. 1990) ...................................................... 8

*Willis v. City of Fresno*, No. 1:09-CV-01766-BAM
2017 WL 5713374, at *6 (E.D. Cal. Nov. 28, 2017) ..................... 10

*Wilson v. Maricopa Cty.*
463 F. Supp. 2d 987 (D. Ariz. 2006) ............................................ 7

*Zhang v. Am. Gem Seafoods, Inc.*
339 F.3d 1020 (9th Cir. 2003) ...................................................... 6

5

**Statues**             **Pgs.**

Federal Rule of Civil Procedure 50(b)  ....................................................... 5

Federal Rule of Civil Procedure 59(a)  ....................................................... 6

42 U.S.C. § 1983.................................................................................... 13

# I. **INTRODUCTION**

Defendant Sgt. Sheree Anthony has offered no new argument to that posited in her original Motion for JMOL. (Dkt. No. 200.) She still maintains that plaintiff failed to present any proof that defendant's final gunshot killed decedent, Anthonie Smith, or that it caused him to suffer any pain or suffering, claiming that it forced the jury to speculate as to causation.  She also still argues that decedent posed an immediate threat to she and Deputy Deylan Kennedy.  Even defendant's Motion for New Trial is premised on the same argument.   The only new argument presented is that the jury awarded excessive damages considering the evidence submitted at trial; however, even that contention is prefaced upon defendant's already dispelled argument that there was no proof that her last shot killed decedent.

Defendant, by and large, hangs her hat upon the expert testimony of Coroner Mark Fajardo to support what she claims caused decedent's death.[1]  Yet, she fails to recognize that there is no legal authority requiring expert testimony on causation in a § 1983 action. To the contrary, "[c]ircumstantial and testimonial evidence are indistinguishable insofar as the jury fact-finding function is concerned, and circumstantial evidence can be used to prove any fact[.]" *United States v. Ramirez-Rodriquez*, 552 F.2d 883, 884 (9th Cir. 1977); *see Friedman v. Live Nation Merchandise, Inc.*, 833 F.3d 1180, 1189 (9th Cir. 2016).[2]

She also relies heavily on her own self-serving testimony and that of Deputy Kennedy. However, she failed to consider the degree to which plaintiff discredited their testimony (and other deputies) throughout the course of trial.

The jury was free to weigh all the evidence, circumstantial, direct, and testimonial; rejecting some and giving other evidence the weight, it deserves in

---

[1] Assuming the jury believed Dr. Fajardo's testimony that all five wounds to decedent's chest were **potentially** fatal, it could still reasonably have determined that the first four of those wounds were not **actually** fatal. (See Dkt. No. 226, p. 5-6)

[2] 1 See also 9th Cir. Civ. Jury Instr. 1.12 ("The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.").   See Jury Instruction No. 7 in this case.

light of all the other evidence.[3]    Ultimately, defendant's motions fail because drawing the proper inferences in favor of plaintiff, sufficient evidence supports the jury verdict.

## II.    MATERIAL FACTS ELICITED AT TRIAL

Sufficient evidence was offered at trial to the jury to support findings that: 1. Anthony caused decedent's death when she shot him the final time; 2. Decedent suffered harm as a result of the final gunshot; 3. Decedent did not pose an immediate threat to the deputies or to the public prior to the final gunshot; and, 4. The shooting deputy defendant's credibility was eviscerated before the jury due to inconsistencies between their statements to Investigator Corey and their deposition and trial testimony.

That evidence is as follows:

Trial Exhibits ("Exh.") 76A and 79 are videos presented to the jury that clearly depict that decedent Anthonie Smith was alive when he stood up from the ground after having been fired at and struck several times by Deputy Kennedy's and Sgt. Anthony's gunshots.  The video further demonstrates that decedent fell to the ground never to rise again after Sgt. Anthony fired that last shot.  Moreover, the video clearly shows that the decedent's body responded dramatically and immediately from being struck in the chest by Sgt. Anthony's last shot.  His body's response was neither gradual or deliberate.

The parties stipulated that decedent suffered five potentially fatal gunshot wounds.  See Jury Instruction No. 14.  Similarly, Coroner Fajardo testified that decedent sustained five (5) gunshots to his chest, all of which were potentially fatal.  (See Exh. 1, Trial Tr. 13:14-15; 14:11-16:12; 24:19-25:12, Nov. 14, 2018 P.M.)  The jury was also permitted to view autopsy photographs via Trial Exhibits

---

[3] See 9th Cir. Civ. Jury Instr. 2.13 (noting that expert opinions "should be judged like any other testimony"). See Instruction No. 12 in this case.

286, 285-188, 285-189, 285-192 and 285-193; all of which assisted the trier of fact to consider where decedent was shot. (See also Exh. 9, Trial Exh. 198.)

Defendant Anthony testified that she was aware that her gunshot caused a response in decedent:

> 8 Q. When you shot, did you see any kind of response upon the
> 9 face of Mr. Smith or have him say anything to you at that
> 10 moment?
> 11 A. He seemed shocked, but it seemed like he still was coming
> 12 forward towards me. But he seemed shocked, but he kept
> 13 coming -- he kept coming towards me.

(See Exh. 3, Trial Tr. 103:08-13, Nov. 15, 2018, P.M.)

Sgt. Anthony further testified that she shot decedent center mass and not in his arms or legs. (Id. at Trial Tr. 114:23-115:6, Nov. 15, 2018, P.M.) Sgt. Anthony confessed to Investigator Corey that "She could see her final round impact him, and he fell to the ground." (See Exh. 8, Trial Exh. 39-81:20-24.) Moreover, she told Investigator Corey that after decedent fell to the ground, she approached him and observed him laboring to breathe. (Id. at Trial Exh. 39-82:17-18.) There was no evidence produced at trial by the defendants to rebut the fact that the last shot caused Mr. Smith's death.

Deputy Kennedy testified that Sgt. Anthony took the final gunshot at decedent. (See Exh. 2, Trial Tr. 91:5-6 Nov. 15, 2018, A.M.) He also testified that the nine gunshots that he fired at decedent appeared to have no effect on decedent, "he was indestructible". (See Exh. 3, Trial Tr. 12:22-13:1, Nov. 15, 2018, P.M.)

Throughout plaintiff's closing argument, counsel implored the jury to review Trial Exhibit 39. "And I'm going to ask you to look during deliberation to Exhibit 39, and you can read the defendant's statements made right after the shooting. Look at her statements and compare her statements with the video to see if they jive."

(See Exh. 7, Trial Tr. 8:13-16, Nov. 20, 2018, P.M. Exh. 10, Slide from Closing Argument.)

Plaintiff specifically referred to the statement to Corey in her closing argument, identifying Trial Exhibit 39-82:17-18:

9  Defendant also testified -- or I should say stated to

10 Corey that she heard Mr. Smith's labored death -- breath, I

11 should say, as he laid on the ground. We put up the caption on

12 that is "Anthonie is human."

(See Exh. 7, Trial Tr. 11:9-12, Nov. 20, 2018, P.M.)

## III. **STANDARD OF REVIEW**

### a. **Standard of Review for a Motion for JMOL**

Pursuant to Federal Rule of Civil Procedure 50(b), after a verdict is returned by a jury, a federal court may grant judgment as a matter of law "when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003). If there is substantial evidence to support the jury's verdict, the court should deny a motion for judgment as a matter of law. See *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994). "[T]he court must not weigh the evidence but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Wallace*, 479 F.3d at 624. The court must "view the evidence in the light most favorable to the nonmoving party ... and draw all reasonable inferences in that party's favor." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).

In other words, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000).   Bottom line, after drawing all proper inferences, "the district court must uphold the jury's award if there was any 'legally sufficient basis' to support it." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).

### b.  Standard of Review for a Motion for New Trial

"Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Instead, such a motion may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). Thus, the Court is "bound by those grounds that have been historically recognized." *Zhang*, 339 F.3d at 1035. "The judge can weigh the evidence and assess the credibility of witnesses and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

The Ninth Circuit has provided the following guidance for ruling on a Rule 59 motion:

> On the one hand, the trial judge does not sit to approve miscarriages of justice. His [or her] power to set aside the verdict is supported by clear precedent at common law and, far from being a denigration or a usurpation of jury trial, has long been regarded as an integral part of trial by jury as we know it. On the other hand, a decent respect for the collective wisdom of the jury, and for the function entrusted to it in our system, certainly suggests that in most cases the judge should accept the findings of the jury, regardless of his own doubts in the matter.... If, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has

been committed, it is to be expected that he [or she] will grant a new trial.

*Landes Constr. Co., Inc.*, 833 F.2d at 1371-72.

While a court "may grant a new trial if the verdict is contrary to the clear weight of the evidence," it may not do so "simply because it would have arrived at a different verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

## IV. **ARGUMENT**

**1. Substantial direct and circumstantial evidence was presented for the jury to conclude that Sgt. Anthony's last shot caused decedent's death.**

The evidence establishes the following:

1. Decedent suffered nine gunshot wounds in total.

2. Decedent suffered five gunshot wounds to the chest, all of which were potentially fatal to decedent.

3. Sgt. Anthony's last gunshot was one of the five potentially fatal gunshot wounds to decedent's chest, as she testified that she aimed for the center mass of decedent's body, and it can be inferred from the testimony and other evidence that she did in fact shoot decedent center mass.

4. None of the other gunshots (which were potentially fatal) had any effect on decedent and he certainly appeared to still be alive and standing prior to Sgt. Anthony's last gunshot as demonstrated in Trial Exhibits 76A and 79.

5. Decedent immediately fell to the ground as a direct result of being shot by Sgt. Anthony the last time.

In this case, plaintiff presented substantial evidence that the last gunshot caused the death of decedent. Causation requires a showing that the officers' conduct was a "moving force" behind the constitutional violation. *Wilson v. Maricopa Cty.,* 463 F. Supp. 2d 987, 994 (D. Ariz. 2006). In order to be a moving force, Plaintiffs must show that the unconstitutional actions were "closely related

to the ultimate injury." *City of Canton v. Harris*, 489 U.S. 378, 379 (1989); *see Oviatt v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992).

In evaluating whether decedent's death was "caused" by the violation of federal law as required by *Chaudhry vs. City of L.A.,* 751 F.3d 1096, 1105 (9th Cir. 2014), the Court applies the same causation standard that generally applies in § 1983 claims: Plaintiff must establish both causation-in-fact and proximate causation. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). *Once it is established that the defendant's conduct has in fact been **one** of the causes of the plaintiff's injury*, the Court must evaluate whether the defendant should be legally responsible for the injury. *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990).

The plaintiff need not prove causation with absolute certainty, but instead "need only 'introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result' ." *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, No. 07CV280-IEGRBB, 2008 WL 5147201, at *4 (S.D. Cal. Dec. 8, 2008) quoting *Viner v. Sweet*, 30 Cal. 4th 1232, 1243 (2003) quoting *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205.

A plaintiff may show that it is reasonably probable to infer that defendant's negligent act proximately caused her injury by circumstantial and indirect evidence; she need not show that there is no possibility of deriving any other reasonable inference from the evidence. *Kopfinger v. Grand Central Pub. Market*, 60 Cal.2d 852, 856-857 (1964); *Varas v. Barco Mfg. Co,*, 205 Cal.App.2d 246, 262 (1962).

Defendant contends that plaintiff must establish medical causation, yet offers no case law to support such a contention. Competent evidence has been admitted that establishes by a preponderance of evidence that Sgt. Anthony's last gunshot was more than likely *the fatal shot*. Decedent's death following the final

gunshot was clearly foreseeable. The jury could and apparently did disregard the prior four potentially fatal shots as an intervening force because decedent was still alive and standing before the last shot was fired.

Defendant spends considerable argument stating that the jury was required to speculate as to causation, or that plaintiff did not call its own medical expert to support her position (see Dkt. No. 231, 7:5-8:6); yet, such an argument wholly disregards the Court's instructions regarding the jury's duty to weigh all evidence, including circumstantial evidence and expert testimony,[3] The verdict supports the jury's inference drawn from all admissible evidence that the last shot likely caused decedent's death, and not the others.

The outcome of this case came down to which witnesses the jury believed had told the truth and of course the video evidence, to which defendant did not want the jury to "believe their lying eyes". The jury weighed these factors and came back with a reasonable and fair verdict.

2. **Plaintiff Submitted Substantial Evidence of Pre-Death Pain and Suffering although Such Evidence is Not Required under *Chaudhry* and its Progeny of Section 1983 Cases**

As discussed *supra*, plaintiff has offered sufficient evidence that decedent suffered pre-death pain and suffering. Defendant acknowledged that decedent was in shock, which is commonly known as a symptom the onset of immediate, excruciating pain and traumatic injury. (See Exh. 3, Trial Tr. 103:08-13, Nov. 15, 2018, P.M.) It is illogical for her now to argue that decedent ceased to be shocked or in pain after she fired her last shot. Moreover, neither defendant Anthony nor Deputy Kennedy shot decedent in the head.

Notwithstanding plaintiff's evidence, such a position is contrary to section 1983 jurisprudence in the Ninth Circuit, which has consistently held that it would

---

[3] Jury Instruction ("JI") No. 7: Circumstantial evidence is proof of one or more facts from which you could find another fact…The law makes no distinction between the weight to be given either direct or circumstantial evidence…JI No. 12:…[expert] opinion testimony should be judge just like any other testimony…JI No. 10:…you may decide which testimony to believe…

1    be inconsistent with *Chaudhry* to limit recovery only to instances where Plaintiff
2    can show an "appreciable time" prior to death. *Willis v. City of Fresno*, No. 1:09-
3    CV-01766-BAM, 2017 WL 5713374, at *6 (E.D. Cal. Nov. 28, 2017).    In
4    *Chaudhry*, the Ninth Circuit held that California's survival statute limits recovery
5    too severely to be consistent with § 1983's deterrence policy because California
6    did not allow damages for pre-death pain and suffering. *Chaudhry*, 751 F.3d at
7    1103, 1105.    That conclusion advanced "[o]ne of Congress's primary goals in
8    enacting § 1983"—"provid[ing] a remedy for killings unconstitutionally caused or
9    acquiesced in by state governments," id. at 1103—by avoiding the "perverse effect
10    of making it more economically advantageous for a defendant to kill rather than
11    injure his victim." *Id.* at 1104.[4]

Section 1983's twin policies of compensation and deterrence would be
13    undermined should defendants benefit from a plaintiff dying quickly following a
14    defendant's intentional constitutional violation. If a plaintiff were denied recovery
15    for pre-death pain and suffering for "mere moments" of suffering, the perverse
16    effect cautioned in *Chaudhry* would result—there would be an economic incentive
17    to "kill them fast," thereby cutting off claims for pain and suffering. Thus, the
18    policies of compensation and deterrence are furthered by awarding damages for
19    every second a decedent survived following a constitutional violation. *Willis v.
20    City of Fresno*, No. 1:09-CV-01766-BAM, 2017 WL 5713374, at *7 (E.D. Cal.
21    Nov. 28, 2017)

Section 1983 presupposes that damages that compensate for actual harm
23    ordinarily suffice to deter constitutional violations. *Memphis Cmty. Sch. Dist. v.
24    Stachura*, 477 U.S. 299, 310 (1986), citing *Carey v. Piphus*, 435 U.S. 247, 256-57
25    (1978). The Supreme Court also has characterized compensatory damages in
26    Section 1983 actions as "mandatory" when a violation is found. See *Smith v.*

---

[4] This *Willis* Court distinguished the cases cited by Defendants such as *Ghotra v. Bandila Shipping Inc.*, 113 F.3d 1050, 1061 (9th Cir. 1997) as not persuasive in a civil rights context because none of the cases assessed compensatory damages after the intentional wrongful conduct of a state actor, resulting in a violation of Constitutional rights. *Willis* at *6.

10

*Wade*, 461 U.S. 30, 52 (1983) ("Compensatory damages, by contrast, are mandatory; once liability is found, the jury is required to award compensatory damages in an amount appropriate to compensate the plaintiff for his/her loss.").

The policies of compensation and deterrence are furthered by awarding damages for every second a decedent survived following a constitutional violation, irrespective of the length of time until the decedent expires. After the final shot, defendant viewed decedent on the ground laboring to breathe, such evidence was borne out in trial and provided the jury sufficient evidence to determine that decedent and plaintiff sustained harm and a constitutional violation as result of defendant Anthony's use of excessive force. (See Exh. 3, Trial Tr. 103:08-13, Nov. 15, 2018, P.M.; Exh. 8, Trial Exh. 39-82:17-18.)

Lastly, it is quite disingenuous that defendant would claim "plaintiff failed to make clear the type of injuries" when the term "harm" is specifically noted in the jury instructions used in the trial. Indeed, even the Court preferred the language "causing harm" because it "is more consistent with what the jury instructions say". (See Exh. 6, Trial Tr. 6:15-17, Nov. 20, 2018, A.M.)

**3. Plaintiff Submitted Substantial Evidence that The Totality of The Circumstances Warranted a Finding of Excessive Force, Liability for the Other Force-Related State Claims, and that Defendant's Testimony was Not Credible or Trustworthy.**

The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Defendant argues that plaintiff "has failed to establish a factual basis for a judgment in her favor on the claims that Sgt. Anthony's final shot was excessive." With regard to the most important factor in the excessive force analysis -- whether the suspect poses an immediate threat, see *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) -- she contends that "the evidence that has come out at trial

1   leaves no room for serious doubt that Sgt. Anthony had probable cause to believe
2   that the decedent posed a threat of serious physical harm." However, sufficient
3   evidence was presented at trial for the jury to conclude that, at the time of the last
4   shot, decedent no longer posed a threat to Sgt. Anthony or anyone else.

5       Trial Exhibit 76A, illustrates that decedent was 1. Wounded; 2. Held no
6   weapons in his hands at that time; 3. Did not lunge towards Sgt. Anthony; 4.
7   Stumbled backwards as he stood up; and, 5. Did not attempt to flee from Sgt.
8   Anthony.

9       Although, in this case it is possible to draw two inconsistent conclusions
10   from the evidence presented by plaintiff versus the evidence presented by
11   defendant, plaintiff has nevertheless provided sufficient evidence to show that the
12   level of force used by Sgt. Anthony surpassed what was necessary to gain control
13   of decedent. See *Maynard*, 37 F.3d at 1404.

14       Defendant, on the other hand, has failed to appreciate evidence submitted at
15   trial which discredited her rendition of the events on July 16, 2015.   Indeed,
16   plaintiff's counsel took the time to particularly illustrate to the jury the frequency
17   and severity of inconsistencies between defendants' witnesses during the criminal
18   homicide investigation and their subsequent deposition and trial testimony.  (See
19   Exh. 7, Trial Tr. 7:4-10:23, Nov. 20, 2018, P.M.; Exh.10.)

20       An officer may use deadly force if he has "probable cause to believe that the
21   suspect poses a threat of serious harm, either to the officers or to
22   others[.]" *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). When someone points a gun
23   at an officer, the "Constitution undoubtedly entitles the officer to respond with
24   deadly force." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). But in the
25   plaintiff's scenario [to which the court is required to give deference], even with
26   decedent's erratic behavior, "if the suspect *doesn't* reach for his waistband or make
27   some similar threatening gesture, it would clearly be unreasonable for the officers
28   to shoot him...." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014). If

1  decedent only lifted his shirt to show [a weapon] in his waistband, then a
2  reasonable jury could find that he did not pose an immediate threat and that in any
3  event, a warning was feasible. *See, e.g., George*, 736 F.3d at 832–33, 838–39.

4       By virtue of the resounding verdict on all counts, it may inferred that the
5  jury did not believe that decedent posed an immediate threat immediately before
6  the final gunshot by defendant Anthony.

7       Where there is no surviving witness, courts "carefully examine all the
8  evidence in the record ... to determine whether the officer's story is internally
9  consistent and consistent with other known facts." *Gonzalez v. City of Anaheim*,
10 747 F.3d 789, 795 (9th Cir. 2014). The court must also examine "circumstantial
11 evidence that, if believed, would tend to discredit the police officer's story." *Id.*
12 Bearing that in mind, the present record furnishes abundant grounds for a jury to
13 reasonably question Sgt. Anthony's credibility and accuracy.  (See Exh. 10.)

14      Defendant also asks the court to consider that the jury found decedent 30%
15 negligent in attempt to establish that the jury rejected plaintiff's claims.  However,
16 the concepts of comparative fault or indemnification are not applicable in actions
17 filed under 42 U.S.C. § 1983. *See Quezada v. County of Bernalillo,* 944 F.2d 710,
18 721 (10th Cir.1991) (no comparative fault or negligence); *Banks v. Emeryville,* 109
19 F.R.D. 535, 539 (N.D.Cal.1985) (no contribution or indemnity). *See also*
20 *Henderson v. Turner,*Civil. Action No. 11–39 Section C(4), 2012 U.S. Dist. LEXIS
21 106630, at *5, 2012 WL 3109482 (M.D.La. July 31, 2012) (granting Motion in
22 Limine to bar comparative fault with respect to § 1983 claims); *Hall v. City of*
23 *Fairfield,* 2:10–cv–00508–GEB–DAD, 2012 U.S. Dist. LEXIS 40256, at *11,
24 2012 WL 996572 (E.D.Cal. Mar. 23, 2012) (disallowing affirmative defense for
25 comparative fault where the plaintiff did not assert a sufficient underlying state law
26 claim). In fact, the jury did not reject plaintiff/decedent's claims at all but placed
27 the blame squarely at the feet of defendant Anthony for her actions, insofar as the
28

state claims are concerned.  The fact remains the jury decided that decedent died as a result of Sgt. Anthony's constitutional violation.

The jury could reasonably have concluded based on the video that decedent did not pose a threat and did not possess a weapon, and that Sgt. Anthony lacked probable cause to believe decedent posed a threat.

Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that ... judgment as a matter of law in excessive force cases should be granted sparingly." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012). Here, defendants' argument is based on the premise that plaintiff was noncompliant and actively resisted the officers' commands. The evidence, however, must be viewed in the light most favorable to plaintiff. Through this lens, it cannot be said that the "evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict" (*Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006)), as plaintiff's testimony and the video amounts to sufficient evidence to support the verdict for excessive force.

### 4. <u>Sgt. Anthony Is Not Entitled to Qualified Immunity</u>

An officer is not entitled to qualified immunity where the "(1) facts viewed in the light most favorable to the injured party show that the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Ford v. City of Yakima*, 706 F.3d 1188, 1192 (9th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson v. Callahan*, 555 U.S. 223, 233 (2009)). A right is clearly established where its "contours ... [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The constitutional right at play in an excessive force claim is the Fourth Amendment and its reasonableness standard. *Graham v. Conner*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989). Defendant Anthony violated decedent's right to be free from unreasonable deadly force and this right was clearly established at the time of the shooting. "The same issues of material fact [precluding summary judgment] also preclude a finding that Defendant is entitled to qualified immunity on the excessive force claim." *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1248 (N.D. Cal. 2015); see also *Lopez v. Gelhaus*, 871 F.3d at 1021-22 (collecting cases). Sgt. Anthony is not entitled to qualified immunity because "few things in our case law are as clearly established as the principle that an officer may not 'seize an unarmed, no longer dangerous suspect by shooting him.' " See *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011)

In the case at bar, the nature and quality of the intrusion on the individual's Fourth Amendment interest is unmatched. *Tennessee v. Garner*, 471 U.S. 1, 9 (1985). The fundamental interest in a person's own life need not be elaborated upon. *Id*. If the individual's interests are unmatched, then the government's countervailing interests must likewise be strong. The countervailing governmental interests at stake should be addressed by considering the totality of the circumstances, including: (a) whether the suspect poses an immediate threat to the safety of the officers or others; (b) whether proper warnings were given; (c) the severity of the crime at issue; (d) whether he is actively resisting arrest; and (e) the availability of less intrusive alternatives to the force employed. *Glenn v. Washington*, 673 F.3d 864, 872 (2011).

As explained in *Deorle*, when the court considers whether there was an immediate threat, a "simple statement by an officer that she fears for her safety or the safety of others is not enough; there must be objective factors to justify such a concern." 272 F.3d at 1281.

///

### a. **Decedent Did Not Pose An Immediate Threat To The Safety Of The Officers Or Others Immediately Before Sgt. Anthony Fired the Last Gunshot.**

Under *Graham v. Connor*, the U.S. Supreme Court evaluated the government's interest in the use of force by examining three core factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest. *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010), citing *Graham*, 490 U.S. at 396, 109 S. Ct. 1865. The *Graham* factors are not exclusive; any specific factors may be appropriate in a particular case, whether or not listed in *Graham*. *Bryan*, at 826, citing *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994). The most important factor is whether the suspect posed an immediate threat to the safety of the officers. *Bryan* at 826.

Here, Decedent was: 1. Wounded; 2. Held no weapons in his hands at that time; 3. Did not lunge towards Sgt. Anthony (as she falsely claimed); 4. Stumbled backwards as he stood up; and 5. Did not attempt to flee from Sgt. Anthony. (See Trial Exh. 76A.)   The decedent did not verbally accost the deputies, and the defendant did not warn him that she would shoot again prior to the last shot. (See Exh. 6, Trial Tr. 52:13-23, Nov. 20, 2018, A.M.)

Decedent failed to get down on the ground as he struggled to gain his balance on his feet and likely struggled to maintain consciousness. At best decedent passively, resisted defendant Anthony's orders to get on the ground immediately prior to the last gunshot.   But "[a] failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force," [let alone lethal force]). *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013)

Even assuming that decedent held a knife and pliers as alleged by Deputy Kennedy, the mere fact that Decedent was holding a pliers and/or a knife did not

justify the use of lethal force at the time Sgt. Anthony fired her last gunshot. *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997); *Curnow, By and Through Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991); and *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011). In *Glenn*, the 9th Circuit found unpersuasive, in determining the question of whether the suspect posed an immediate threat, the fact that the deceased did not drop his knife after over three minutes elapsed of officers screaming at him to drop the knife. *Glenn*, at 873. By comparison, during the moments preceding the last gunshot, Sgt. Anthony gave Decedent only six (6) seconds to respond to commands to drop the knife and get down prior to firing.

**b. Sgt. Anthony Could Have Used Non-Lethal Force By Waiting and Exercising Patience Because Decedent Did Not Pose An Immediate Threat Immediately Before Sgt. Anthony Fired the Last Gunshot.**

Another factor that can be considered by the court is whether Sgt. Anthony could have defused the situation, retreated, or otherwise slowed the scenario down. As desire to resolve a potentially dangerous situation quickly is not the type of governmental interest that justifies the use of force that may cause serious injury. *Glenn*, 673 F.3d at 876-77.

As plaintiff's police practices expert, Jack Smith, officers when interacting with mentally disturbed persons are taught to exercise patience in order to allow the situation to deescalate. (See Exh. 4, Trial Tr. 70:17-71:18, Nov. 16, 2018, A.M.) Indeed, in the moments illustrated in Trial Exhibit 76A, Sgt. Anthony did not need a split-second to determine whether decedent posed a threat. Decedent was not attempting to flee and he was wounded. The exercise of patience was indeed an alternative use of force that defendant was required to consider.

In fact, as argued during plaintiff's closing "[Sgt. Anthony] could have exercised patience as a mortally wounded decedent stood there just trying to gather his balance. She could have just let him fall to the ground and succumb to his injuries if that's what's going to happen". (See Exh. 7, Trial Tr. 16:24-17:3, Nov.

20, 2018, P.M.)

In *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001), the 9th Circuit found an excessive use of force. In that case, the officer observed the suspect at close proximity for about five to ten minutes. *Deorle* at 1281. While the suspect was not initially armed, he was out of control. At various points he brandished a hatchet and a crossbow. The officers took time to set up road blocks on the street and awaited the arrival of a special incident response team and a team of negotiators, prior to shooting him. *Id.* at 1276. Again, there is no reason that Sgt. Anthony couldn't have simply observed decedent for a span of time, potentially allowing the situation to defuse.

As outlined above, there arguably was no immediate threat to the deputies or others. If Sgt. Anthony really felt threatened, she would not have approached Decedent, and she had no need to do so. She could have stayed behind cover and simply waited for decedent to feel the effects of his multiple gunshot wounds. The fact that Sgt. Anthony decided to shoot decedent in less than 10 seconds as he stood wounded from eight previous gunshots is a factor that weighs against her. There was simply no need to force the confrontation.

Sgt. Anthony used excessive force when she fired the last gunshot, the jury necessarily determined that Sgt. Anthony lacked probable cause to believe Decedent presented an immediate threat of death or serious bodily injury. (See JI No. 19(2)(a).) The jury could also have found that Decedent was unarmed.[5] There was sufficient evidence to support such findings and deny Sgt. Anthony qualified immunity.

**c. Defendant's Argument that There is No Precedent that Would Have Put Her On Notice Flies in the Face of _Tennessee v. Garner_.**

As the Court noted in its order on defendant's original motion for JMOL

---

[5] Defendant's expert James Borden could not confirm that decedent possessed a weapon during the moments prior to the final gunshot. Trial Tr. 42:6-9,22-24, Nov. 20, 2018, A.M.

(Dkt. No. 226, p.6), "few things in our case law are as clearly established as the principle that an officer may not 'seize an unarmed, non-dangerous suspect by shooting him dead' in the absence of 'probable cause to believe that the . . . suspect poses a threat of serious physical harm, either to the officer or to others.'" *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011) (quoting *Tenn. v. Garner*, 471 U.S. 1, 11 (1985).

The Supreme Court did decide in *Tennessee v. Garner* that deadly force was not generally justified against a suspect who did not pose an immediate threat as decedent did not, if all facts are construed in his favor.

It is not required that the exact conduct has been found unconstitutional in a previous case. *E.g. Hope v. Pelzer,* 536 U.S. 730, 741("officials can still be on notice that their conduct violates established law even in novel factual circumstances."). Indeed, it is just common sense that continuing to shoot someone who is already incapacitated is not justified under these circumstances. *Patterson v. Randazzo*, 160 F. Supp. 3d 849, 865 (M.D.N.C. 2016); *Margeson v. White Cty., Tenn.*, 579 F. App'x 466, 469 (6th Cir. 2014); *Brockington v. Boykins*, 637 F.3d 503, 508 (4th Cir. 2011). See also *Hopkins v. Andaya,* 958 F.3d 881, 886–87 (9th Cir. 1992) (finding potentially unreasonable a second set of shots after the officer had wounded, disarmed, and broken away from the suspect, crossed a street, reloaded, called for backup, and placed a car between himself and the suspect)[6]; *Tubar v. Clift,* 453 F.Supp.2d 1252, 1257 (W.D.Wash.2006) (describing plaintiff's evidence as showing that the officer "paused, aimed, and fired" a third shot through the driver's side window after plaintiff's vehicle was moving slowly away from the officer); *Abraham v. Raso*, 183 F.3d 279 (3rd Cir. 1999); and *Waterman v. Batton*, 393 F.3d 471, (4th Cir. 2005).

/ / /

---

[6] Although the court in *Federman v. Cty. of Kern*, 61 F. App'x 438, 440 (9th Cir. 2003) impliedly overruled *Hopkins* as to its qualified immunity analysis, the court ultimately deemed it was harmless error, as the facts presented pass the *Saucier* inquiry. *Id.* at 440.

5. **The Jury's Verdict on Plaintiff's 14th Amendment Substantive Due Process Claim Should Remain Undisturbed**

Defendant also argues for judgment in their favor on the substantive due process claim because "there was no evidence at trial showing that Sgt. Anthony acted with a purpose to harm Smith for reasons that were unrelated to legitimate law enforcement objectives." She attempts to buttress this argument with the fact that the jury failed to award punitive damages. (Dkt. No. 231, p. 21.) Defendant overlooks the phase 1 verdict form, wherein the jury was asked to award plaintiff Sybil Davis damages for the loss of decedent and his society. Defendant merely offers conjecture as to why the jury fashioned an award as they did. Also, it cannot go unnoticed that the jury took into consideration defendant's use of excessive force and her statements to plaintiff and weighed those against defendant's testimony at trial.

Plaintiff Sybil Davis testified that Sgt. Anthony told her that the decedent was "going to get it" for assaulting Deputy Roger Ocker. (See Exh. 5, Trial Tr. 37:7-22, Nov. 16, 2018, P.M.) Moreover, plaintiff persistently exposed the jury to the wide array of inconsistencies between defendant's and other deputies' statements during the initial criminal homicide investigation and their deposition and trial testimony. (See Exh. 10.) The jury certainly considered defendant Anthony's credibility and ultimately found Ms. Davis more trustworthy. Moreover, the jury was allowed to view the video evidence that appeared to show defendant take the deliberate and measured final shot as decedent stood wavering on his feet for several seconds. (See Trial Exh. 76A.)

The totality of the evidence provided the jurors sufficient evidence to determine Sgt. Anthony had a motive other than legitimate law enforcement objectives for firing the last shot.

/ / /

/ / /

**6.**     **The Court Must Deny Defendant's Motion for New for the Very
Reasons her Motion for JMOL Fails**

### a. Qualified Immunity and Sufficiency of the Evidence of Excessive Force

To the extent defendant moves for a new trial based on claims of qualified immunity and insufficient evidence of excessive force, defendant's motion fails. As set forth above, defendant and plaintiff presented opposing facts regarding the incident. Defendant's claims are based on the deputies' testimony about decedent's threat level and active resistance moments prior to the final shot to justify the use of force—evidence that the jury rejected when reaching its verdict. Although plaintiff's version of the facts is at odds with defendant Anthony and Deputy Kennedy's testimony, a court should not lightly "invade the province of the jury" in deciding a motion for a new trial. See *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012). Given plaintiff's testimony and the video evidence, from which a juror could reasonably conclude that the deputies used unreasonable force, the court cannot definitively say that a mistake has been committed with respect to the jury's verdict. Accordingly, because the record contains evidence in support of the verdict and defendant failed to show that the verdict is contrary to the clear weight of the evidence, defendant is not entitled to a new trial on the jury's verdict. See *Go Daddy Software, Inc.*, 581 F.3d at 966 ("[b]ecause the record contains evidence in support of the verdict," the "district court did not abuse its discretion in denying" the motion for a new trial); *Silver Sage Partners, Ltd.*, 251 F.3d at 819 (a court may grant a motion for a new trial if the jury "verdict is contrary to the clear weight of the evidence").

For these reasons, the Court must accept the findings of the jury, and deny defendant's Rule 59 Motion based on qualified immunity and lack of sufficient evidence of excessive force.

### b. The Jury's Award Was Not Grossly Excessive or Monstrous.

Defendant argues that the jury's award of $2,200,000 is excessive and

1  improperly based on speculation. According to defendant, plaintiff did not suffer
2  any pre-death pain and suffering, and there was insufficient evidence of such to
3  justify the jury's award. Plaintiff has debunked defendant's argument that plaintiff
4  must establish an endurance of pain by a decedent for an appreciable amount of
5  time *supra* as incongruent with Ninth Circuit precedent under *Chaudhry*.
6  *Chaudhry*, 751 F.3d at 1103, 1105.

7      A court must uphold a jury's damages award unless the award is "grossly
8  excessive or monstrous, clearly not supported by the evidence, or based only on
9  speculation or guesswork." *Del Monte Dunes at Monterey, Ltd. v. City of*
10 *Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996). Additionally, "[c]ompensatory
11 damages may be awarded for humiliation and emotional distress established by
12 testimony or inferred from the circumstances, whether or not plaintiffs submit
13 evidence of economic loss or mental or physical symptoms." *Johnson v. Hale*, 13
14 F.3d 1351, 1353 (9th Cir. 1994); see also *Tortu v. Las Vegas Metro. Police Dep't*,
15 556 F.3d 1075, 1086 (9th Cir. 2009) (Section 1983 damages include "impairment
16 of reputation, personal humiliation, and mental anguish and suffering"). The
17 testimony of the plaintiff alone can substantiate a jury's award of damages. *Smith*
18 *v. City of Oakland*, 538 F.Supp.2d 1217, 1240 (N.D. Cal. 2008).

19     Here, the jury found that Sgt. Anthony used unreasonable force against
20 plaintiff. Sgt. Anthony herself testified that decedent reacted and was shocked
21 when she shot him; she also testified that decedent labored to breathe as she
22 approached him on the ground at the intersection of Sunnymead and Perris.
23 Furthermore, decedent's mother and sister testified as to the loss of society that
24 plaintiff had endured since her son's death. Ms. Davis said: "I miss my son. I just
25 miss him. Anthonie, that was my son. Anthonie was very -- he was a sweetheart.
26 He had his moments like any other kid, but overall like he was a goofball, and I
27 miss like us interacting with each other and bagging, like we would talk about each
28 other and tease each other and stuff, and I just miss us being together as a family".

(See Exh. 5, Trial Tr. 45:19-46:2, Nov. 16, 2018, P.M.)  Moreover, plaintiff explained how decedent's mental illness had caused them to grow closer and stronger as a family.  (Id. at Trial Tr. 46:6-49:3, Nov. 16, 2018, P.M.)

On this record, the jury's award of damages is not against the clear weight of the evidence. Nor can it be said that the jury made a mistake by improperly basing the damages on speculation, because any award they made was based upon Jury Instruction No. 35. Indeed, the jury's award here appears to be consistent with typical plaintiff-judgments in the Ninth Circuit.  Quite frankly it's quite disrespectful that defendant would now make such a statement knowing full well that the jury deliberated for three days on the phase one verdict.

## III.  **CONCLUSION**

For the forgoing reasons, the Court should deny defendant's motions. Sufficient evidence was presented to support the jury's decision; the verdict is not contrary to the clear weight of the evidence.


Respectfully submitted,

**HARRIS &ASSOCIATES**

DATED:  March 27, 2019

By:  */s/ Herbert Hayden*
John W. Harris
Herbert Hayden
Attorneys for Plaintiff,
SYBIL DAVIS

23